**H. W. ALEXANDER et al., Appellants,**

**v.**

**Woodrow GLASSCOCK, Appellee.**

**No. 6723.**

Court of Civil Appeals of Texas.

Texarkana.

Sept. 9, 1954.

Gordon R. Wellborn, Rex Houston, Henderson, for appellants.

B. Reagan McLemore, McLemore & McLemore, Philip Brin, Longview, for appellee.

FANNING, Justice.

Appellee, Woodrow Glasscock, brought this suit against appellants H. W. Alexander, W. E. Wylie, President of Citizens National Bank of Henderson, Texas, and against said bank to recover $2,000.00 escrow money theretofore deposited by Glasscock under a contract to purchase oil and gas leases and royalties. On October 2, 1951, Alexander and Glasscock entered into a written contract for the sale and purchase of four items of oil and gas interests of Alexander to Glasscock. Items 1, 3 and 4 dealt with in the contract were delivered and paid for. The instant controversy concerns item 2. As to item 2 the contract provides in part as follows:

"Party of the First Part (H. W. Alexander) agrees to convey to Woodrow Glasscock a merchantable title to the following: * * * A merchantable title covering a five year oil and gas lease on the following described tract of land, to-wit: (Followed by a description of an 80 acre tract of land out of the Ebenezer Moore Survey in Rusk County, Texas) * * *

"Party of the Second Part agrees to pay $25.00 per acre for said lease described in transaction No. '2' above * * * The above funds are to be deposited with W. E. Wylie, President of the Citizens National Bank of Henderson, Texas, and when a Title Opinion from the law office of Gordon R. Wellborn has been presented to W. E. Wylie, together with instruments conveying a merchantable title covering the above transaction, then W. E. Wylie shall deliver the funds to H. W. Alexander and deliver the instruments to Woodrow Glasscock.

"The rental under all leases shall be $1.00 per acre and the Citizens National Bank of Henderson, Texas, shall be the depository therefor.

"Witness our hands at Henderson, Texas, this 2nd day of October, 1951.

H. W. Alexander
Woodrow Glasscock."

The contract does not set any time limit for performance. Shortly after the execution of the contract (the exact time being in dispute at the trial) Hon. B. Reagan McLemore, attorney, called Hon. Gordon R. Wellborn, attorney by telephone from Longview and advised him to the effect that he represented Glasscock and that Glasscock had requested that he also examine the various abstracts. The time and nature of this telephone conversation were in dispute at the trial, but at any rate, some six months or so after the date of the contract, attorney McLemore advised Alexander's attorney and the escrow agent to the effect that Glasscock considered the contract with respect to item 2 void and unenforceable (for various reasons) that too much time had elapsed, etc., and Glasscock demanded the return of the $2,000 placed in escrow by

him to cover the purchase price of the oil and gas lease covering item No. 2. An executed copy of a lease from Alexander and wife was tendered to Glasscock and by him refused. Return of the escrow money was refused, and this suit followed. Trial was to a jury and after the testimony closed the trial court instructed the jury to return a verdict in favor of Glasscock against the appellants for the return of the $2,000, which verdict was returned by the jury and judgment was entered thereon. From this judgment appellants have appealed.

Appellants contend that the trial court erred in granting plaintiff's motion for instructed verdict because under the pleadings and evidence: (1) "A question of fact was raised as to what was the contract of the parties with reference to when and how merchantable title would be shown;" (2) "a question of estoppel on the part of the plaintiff was raised;" (3) "a question of ratification of the contract by the plaintiff was raised;" and (4) "a question of waiver of the so-called defects in the contract by receiving and accepting the benefits therefrom was raised."

Appellee contends that the contract in question, being a contract for the sale and purchase of an oil and gas lease on the homestead of seller providing for the delivery of a merchantable title, not having specified the date of the commencement of the lease, the anniversary date for payment of delay rentals, or the end of the primary term, or the other terms and provisions of the lease, was in violation of the statute of frauds, Vernon's Ann.Civ.St. art. 3995, was not enforceable against the seller or the buyer and was not made enforceable by the estoppel, waiver and ratification pleaded. Appellee also earnestly contends that the title tendered him by Alexander was based upon limitation or adverse possession and that such a title is not a merchantable title. Appellee also contends that appellants waited over 8½ months before attempting to tender an oil and gas lease, and that such was an unreasonable time to wait.

Appellants also contend that if the contract in question called for a merchantable

title as that term has become defined by the courts of this state, instead of a contract of the parties that same should be closed when the law offices of attorney Wellborn certified that the title was merchantable, then the defendants (appellants herein) alleged the parties entered into a new contract providing for performance when the title was certified as merchantable by the law offices of attorney Wellborn, that there was a change of position by both parties, time and money spent by Alexander, etc., and that appellee was estopped to deny that the title would be deemed merchantable when so certified by the law office of attorney Wellborn. A large portion of the controversy here centered around the contention of appellants' attorneys that a title based upon adverse possession or limitation was a merchantable title with the counter-contention of appellee's attorney that such character of title was not a merchantable title. Both Mr. Wellborn's law office (opinion being written by Hon. Rex Houston of Wellborn's law office) and attorney Mr. McLemore rendered written opinions upon the title to tract No. 2. Both of these opinions recognize that the record title to tract No. 2 was not good. We have also examined the abstract to the tract in question and find that there are breaks in the title and other objections as pointed out in each of these title opinions. Appellants, however, contend that the title to the tract in question is good by virtue of adverse possession under the 25-year statute of limitation, Vernon's Ann.Civ.St. art. 5519, as pointed out in the opinion of attorney Wellborn's law office.

■ In Owens v. Jackson, Tex.Civ.App., Austin, 35 S.W.2d 186, 188, writ dis., it was held that the requirement that a merchantable title be furnished was not satisfied by tendering a title based upon twenty-five years' adverse possession, saying: "The parties hereto contracted for a merchantable title shown by an abstract. Ex parte affidavits, whether showing title by limitation in the vendor, or denying the execution of a recorded deed, or stating that such deed was recorded through mistake, would not be admissible in evidence in an action to recover the land, and are not recorded evidence of title. * * * The contract herein sought to be specifically enforced made no reference to a limitation title, but provided that a 'merchantable title' shown by the abstract be furnished. That is, that the record title be merchantable; and a limitation title does not meet that requirement." The following cases also hold that a limitation title is not a merchantable title, to-wit: Cline v. Booty, Tex.Civ.App., 175 S.W.2d 1081, error refused; Szanto v. Pagel, Tex.Civ. App., 47 S.W.2d 632, error dismissed; Voges v. Krezdorn, Tex.Civ.App., 127 S.W. 2d 937, and Smith v. Jordan, Tex.Civ.App., 220 S.W.2d 481.

■ We think the written contract in question with reference to item 2, above quoted and referred to, which does not specify the terms, provisions and conditions of the lease to be executed, is clearly in violation of the statute of frauds and was not enforceable. See the following authorities: Taber v. Pettus Oil & Refining Co., 139 Tex. 395, 162 S.W.2d 959, 141 A.L.R. 808; Cantrell v. Garrard, Tex.Com.App., 240 S. W. 533; Laird v. Laird, Tex.Civ.App., 52 S.W.2d 1113, error refused; Fagg v. Texas Co., Tex.Com.App., 57 S.W.2d 87; and Ryan v. Holcombe, Tex.Civ.App., 170 S.W. 2d 838. In Taber v. Pettus, supra [139 Tex. 395, 162 S.W.2d 960], it is stated:

"Taber interposed several defenses, among which was that the contract violates the Statute of Frauds, Art. 3995, subdiv. 4, R.S.1925. We think the memorandum quoted is insufficient as a basis for respondent's suit, because of the provisions of that statute, and that the trial court's judgment was correct. So that proposition is all that we need discuss.

"Cantrell v. Garrard, Tex.Com.App., 240 S.W. 533, is decisive of this case. Garrard agreed to sell to Cantrell 'an oil and gas lease' on 20 acres of land in Wichita County for fifty thousand dollars payable upon examination and approval of the title. Ten thousand dollars was deposited in a bank to be paid to Garrard as liquidated damages in the event of default by Cantrell. The land covered by the lease was adequately

described, but the only description of the terms of the lease was a recitation that 'a lease or an assignment of a lease is hereby proposed to be sold, what is known as a commercial lease, providing for one-eighth royalty to the landowner.' At the time the contract was executed, one Young owned an oil and gas lease on the 20 acres referred to. Within the time specified, Garrard tendered Cantrell an abstract showing good title to the twenty-acre lease in Young and a proper assignment of the lease from Young to Garrard and from the latter to Cantrell. Cantrell declined to accept them. Garrard sued for ten thousand dollars earnest money. Cantrell answered that the contract was void for uncertainty because the lease which Garrard agreed to sell him was not sufficiently described in the contract to identify it. Cantrell's contention was sustained, the court pointing out that since the term for which the lease was to run, the time for beginning drilling operations, the time and amount of payments in lieu of drilling operations, and the amount to to be paid for gas produced, all essential elements of description, were not set out in the contract, the description of the lease was insufficient to identify the same and was, therefore, insufficient to meet the requirements of the Statute of Frauds, hence Garrard was not entitled to recover. This decision has been cited with approval in numerous cases, notably in Fagg v. Texas Co., Tex.Com.App., 57 S.W.2d 87; Laird v. Laird, Tex.Civ.App., 52 S.W.2d 1113, error refused; Sneed v. Lester, Tex.Civ.App., 76 S.W.2d 802, error refused; and Taubert v. Earle, Tex. Civ.App., 133 S.W.2d 145, error refused.

\* \* \* \* \*

"The memorandum in this case calling for 'one hundred and sixty acres of oil and gas leases' and assignments thereof to Taber 'to be the regular Texas Standard Form No. 86, properly executed' certainly makes the essential elements of description referred to in Cantrell v. Garrard and Fagg v. Texas Company, supra, no more capable of definite application than was the language 'oil and gas lease form' or 'an 88 form lease' as used in those cases. Moreover, there was nothing referred to in the memorandum from

which such essential descriptive elements could be ascertained. It is true that it required respondent's assignor to furnish a photostat copy of the oil and gas lease, but it is expressly said that this was not to be done until after the test well had been drilled; and when it was later actually tendered to Taber, he had already repudiated the contract. It follows, therefore, that neither the terms of the lease nor those of the assignment could have been ascertained at the time the memorandum was executed without resort to parol testimony. Hence, this case is ruled by the principle stated by Justice Sharp in Smith v. Sorelle, 126 Tex. 353, 87 S.W.2d 703, 705, that 'if the subject-matter sought to be conveyed is not described sufficiently to identify same, the requirements of the statute have not been met' and that 'the subject granted must be identified by the description given of it in the instrument itself' or by other writing referred to.

"Therefore, we hold that since essential elements of the subject matter attempted to be dealt with in the memorandum signed by Taber could not be identified within the terms of the instrument itself or any writing referred to by it as then in existence, respondent, as assignor of Rancho Oil Corporation cannot recover thereon either for specific performance or for damages. Laird v. Laird, supra; Sneed v. Lester, supra."

In Laird v. Laird, supra [52 S.W.2d 1115], it is stated: "It will be noted that while the time of the duration of the lease was specified, the time when it should commence was not. It will be noted, further, that it appeared from the face of the contract that it was subject to terms not only not clearly stated but not stated at all. Therefore, it is plain enough, we think, the contract was not one on which appellant could maintain an action for either specific performance or for damages."

Appellant Alexander and his wife, while they had not designated any particular homestead, actually lived on tract 2, and under the evidence this tract clearly was a portion of their homestead. Mrs. Alexander did not execute the contract in question.

Appellee contends that this executory contract to convey a part of the homestead (which the wife did not join in) was void and unenforceable (and would have been so then if the wife had properly executed same), citing Bacle v. Pickens, Tex.Civ. App., 78 S.W.2d 260; Pickens v. Bacle, 129 Tex. 610, 104 S.W.2d 482, and Jones v. Goff, 63 Tex. 248. However, we deem it unnecessary to pass on this specific contention in view of our holding that the written contract in question was clearly in violation of the statute of frauds.

■ Appellants in their excellent brief earnestly contend that under the pleadings and evidence there was an issue of fact raised as to whether a new contract was entered into by appellee Glasscock, to the effect that the transaction would be closed when the law offices of attorney Wellborn certified that the title was merchantable. We have carefully reviewed the record in this case and it is our best judgment that although there is some testimony in the record with reference to this matter, really no *material* issue of fact is raised. Especially is this true because there is no evidence in the record that the parties ever agreed orally or in writing as to the date of the commencement of the lease, the date thereon when delay rentals would fall due, or the date the primary term would expire. In other words, if there was oral evidence to the effect that a new contract was made, then there was no further evidence as to the terms, provisions and conditions of the lease as above pointed out.

■ Appellants earnestly contend that there were questions of estoppel, waiver, and ratification raised by the pleadings and evidence that should have been submitted to the jury. Appellants point out testimony showing that certain standard form leases were being used by the law offices of attorney Wellborn, and that Glasscock accepted other leases from Alexander and wife on these forms, etc.; that Alexander spent time and money in securing curative title work, including searching for heirs, the securing of limitation affidavits, the filing of a suit by publication with respect to the tract and securing judgment thereon; that Glasscock had accepted benefits from the transaction by purchasing the other three tracts before raising any contention about tract 2, etc.; that Alexander construed the contract as meaning that all of the land was to be taken, that Glasscock was to take it all or none, that Alexander and Glasscock changed their positions, etc.; that Glasscock had waived merchantable title on some of the other tracts and had accepted a limitation title. However, attorney McLemore testified that he waived the requirement of merchantable title on one of the other tracts only after he had express permission to do so from Glasscock. McLemore further testified that he did not receive authority to waive merchantable title on tract No. 2 and was not authorized by Glasscock to accept a limitation title on tract No. 2. Appellants also point out other testimony with reference to their position and we have carefully considered all of appellants' contentions contained in their excellent brief. However, we are of the opinion that no material issues of estoppel, waiver of ratification were raised to submit to a jury in this case and that the trial court correctly instructed a verdict in favor of appellee. In view of our holding we deem it unnecessary to pass on appellee's other counter-contentions.

The judgment of the trial court is affirmed.